UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| BARRYON TOWNSEND, | § | |
| | § | |
| Petitioner, | § | |
| VS. | § | CIVIL ACTION NO. 2:14-CV-46 |
| | § | |
| WILLIAM STEPHENS, | § | |
| | § | |
| Respondent. | § | |

## MEMORANDUM AND RECOMMENDATION

Petitioner is an inmate in the Texas Department of Criminal Justice - Correctional Institutions Division ("TDCJ-CID") and currently is incarcerated at the McConnell Unit in Beeville, Texas. Proceeding pro se, petitioner filed an original habeas corpus petition pursuant to 28 U.S.C. § 2254 on January 27, 2014 (D.E. 1).[1] Petitioner claims that his right to due process was violated in a disciplinary hearing held at the McConnell Unit which resulted in the imposition of punishment. Respondent filed a motion for summary judgment on April 23, 2014 to which Petitioner responded on June 16, 2014 (D.E. 7, 11). As discussed more fully below, it is respectfully recommended that Respondent's motion for summary judgment be granted and Petitioner's habeas corpus petition be denied. It is further recommended that a Certificate of Appealability be denied.

---

[1] Petitioner stated under penalty of perjury that he placed his petition in the prison mailing system on January 27, 2014 and it is considered filed as of that date. *See Spotville v. Cain*, 149 F.3d 374, 376 (5th Cir. 1998) and Rule 3, Rules Governing Section 2254 Cases.

## JURISDICTION

Jurisdiction and venue are proper in this court because Petitioner is incarcerated in the Corpus Christi Division of the Southern District of Texas.  28 U.S.C. 2241(d); *Wadsworth v. Johnson*, 235 F.3d 959 (5th Cir. 2000).

## BACKGROUND

According to Respondent, Petitioner currently is serving a sixty-year sentence for murder with a deadly weapon (Mot. for Sum. Jmt., Ex. A; D.E. 7-1 at ).  Petitioner claims to also be serving two ten-year sentences—one for burglary of a building and one for possession of cocaine (Resp. to Mot. for Sum. Jmt., D.E. 11 at 1, 7).  Petitioner does not complain about his holding convictions, but challenges the results of a disciplinary hearing.  In disciplinary case number 20140004861, Petitioner was accused and found guilty of failing to obey an order and causing a use of force which resulted in a significant disruption of operations (DHR[2] at 1; D.E. 8-1 at 3).

In the offense report, the charging officer wrote that on September 3, 2013, Petitioner was being moved to another building and refused three orders to accept his housing assignment.  Other offenders began yelling at Petitioner and he was taken to another location where he again refused orders.  The officer called for a supervisor and the incident resulted in a use of force (DHR at 4; D.E. 8-1 at 6).  During the investigation of the incident, Petitioner stated that he did not refuse to obey an order and that he did nothing wrong (DHR at 5; D.E. 8-1 at 7).

---

[2] "DHR" refers to the Disciplinary Hearing Record attached to the Respondent's Motion for Summary Judgment (D.E. 8-1).  "DGR" refers to the Disciplinary Grievance Record also attached to the motion (D.E. 8-2)

At the hearing, Petitioner testified that he was being moved to a transfer/solitary cell as part of an investigation and that he did not refuse to move, but did request a transit cell so that he could have his appliances.  He conceded that he did not go into the solitary cell because thought he was being unjustly punished by being placed there (DHR at 2; D.E. 8-1 at 4).  The charging officer was not called to testify (DHR at 2; D.E. 8-1 at 4).

Petitioner was found guilty based on the charging officer's report and Petitioner's failure to present non-frivolous evidence.  He was punished with the loss of forty-five days of commissary and recreation privileges and the loss of 15 days of good time.  In addition, his line class was changed from L2 to L3 (DHR at 1; D.E. 8-1 at 3).

Petitioner filed a Step 1 grievance on September 16, 2013 in which he said that he was ordered into a solitary confinement housing cell when he had not violated any rules.  He asked to be placed in housing equal to the housing from which he was being transferred and he was then charged with failure to obey an order.  He argued that to obey the order would have subjected him to an unwarranted hardship (DGR at 1-2; D.E. 8-2 at 3-4).  Petitioner received a response telling his that his case had been reviewed and that all due process requirements had been satisfied (DGR at 2; D.E. 8-2 at 4).

Petitioner filed a Step 2 grievance on November 20, 2013, asking for further review of the disciplinary case and pointing out that an incorrect disciplinary case number was referenced, indicating that his case had not actually been reviewed.  He received a response telling him that the referencing of the incorrect disciplinary case number was a clerical error and had been corrected.  He also was told that his case had been reviewed and no further action was warranted (DGR at 4: D.E. 8-2 at 6).

In the instant action, Petitioner asserts that his due process rights were violated because he was punished for failure to obey an order when all he did was ask why he was being placed in solitary confinement when he had not committed any offense. Petitioner explains that he was told to pack his belongings because he was being moved for "Offender Pending Investigation" purposes. He then was escorted to solitary confinement housing and asked why he was being placed in solitary confinement. The officer told him that the solitary cells were being used as transit housing. When Petitioner asked to be placed in housing equal to that from which he was being transferred, the officer called for a use of force to place Petitioner in the cell.

Petitioner argues that the order to move to solitary confinement was not a legitimate order and violated TDCJ policies and procedures. He also argues that placement in the cell itself imposed an atypical and significant hardship on him.

In his motion for summary judgment, Respondent argues that Petitioner has failed to state a claim that his due process rights were violated because he is not eligible for release to mandatory supervision. Respondent concedes that Petitioner's cause of action is not barred by limitations or the bar on successive petitions. Respondent reserves the right to argue that Petitioner's claims are unexhausted should his case not be dismissed for failure to state a claim.

In his response, Petitioner argues that his placement in solitary confinement before he was written up for a disciplinary infraction was a violation of his due process rights because he has a protected liberty interest in being housed in the general prison population rather than being placed in solitary confinement. He asserts that because

prison officials did not have authority to place him in solitary confinement pending the investigation, the subsequent disciplinary proceedings violated his right to due process.[3] Petitioner further argues that although he is not eligible for release to mandatory supervision on the murder conviction, he also is serving sentences on two other convictions and he is entitled to release to mandatory supervision on those convictions.

## APPLICABLE LAW

### A. Due Process Rights

#### 1. Placement in Solitary Confinement

In order to be granted a writ of habeas corpus, a petitioner must show that he is in custody in violation of the Constitution, laws or treaties of the United States. In *Sandin v. Conner*, 515 U.S. 472, 483-484 (1995), the U.S. Supreme Court described the limited instances in which a prison inmate can make out a claim that a liberty interest has been taken without due process.

> The time has come to return to the due process principles we believe were correctly established and applied in [*Wolff v. McDonnell*, 418 U.S. 539, 94 (1974)] and [*Meachum v. Fano*, 427 U.S. 215 (1976)]. Following *Wolff*, we recognize that States may under certain circumstances create liberty interests which are protected by the Due Process Clause. But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

---

[3] Petitioner clarifies that he is not challenging TDCJ rules, customs or procedures as a violation of his constitutional rights, which would need to be addressed via a 42 U.S.C. § 1983 petition, but is challenging the punishment imposed upon him as a result of the disciplinary hearing. (Resp. to Mot. for Sum. Jmt., D.E. 11 at 4).

*Id.* (internal citations omitted).  The Supreme Court held in *Sandin* that confinement in disciplinary segregation for twenty-three hours and ten minutes per day "did not present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest." *Sandin*, 515 U.S. at 486.  The Court focused on the nature of the liberty interest at issue, finding that conditions of disciplinary segregation did not differ significantly from conditions in administrative segregation and protective custody. *Id.* Thus, Petitioner's argument that his placement in solitary confinement for three days prior to the disciplinary hearing violated his due process rights is foreclosed by *Sandin*. *Dehghani v. Vogelgesang*, 229 Fed. App'x. 282, 284 (5th Cir. 2007).  *See also Quaak v. Yeager*, No. H-11-2100, 2012 WL 950183 at *5 (S.D. Tex. 2012)(brief placement in prehearing detention or lock-up does not implicate a protected liberty interest).

    **2. Loss of Good Time**

In Texas, some inmates are entitled to early release under a mandatory supervision program in which a prisoner sentenced to the institutional division can serve the remainder of his term outside the prison, not on parole, but under the supervision and control of the pardons and paroles division. *Madison v. Parker*, 104 F.3d 765, 768 (5th Cir. 1997)(citing Tex. Code Crim. P. Ann. art. 42.18 § 2(2)).[4]  Prisoners earn good time credits which are added to their actual days served in prison to calculate their release date.  Tex. Gov't Code Ann. §508.147 (Vernon 2012).  The Fifth Circuit has determined that prisoners have a constitutional expectation of early release under the mandatory supervision program and therefore have a liberty interest with respect to their good time.

---

[4] Currently located at Tex. Gov't Code Ann. § 508.001(5).

Petitioner in this case is not eligible for release to mandatory supervision on his murder conviction (D.E. 1 at 5; Ex. A to MSJ, D.E. 7-1 at 2). However, he argues that he is eligible for release to mandatory supervision on the burglary and cocaine convictions.

According to the Commitment Inquiry submitted with the summary judgment motion, Petitioner was sentenced to a total of seventy years, indicating that his sixty-year sentence was to run consecutively to his ten-year sentences, or they were scheduled to run consecutively to his sixty-year sentence (Commitment Inquiry, Ex. A to Mot. Sum. Jmt., D.E. 7-1 at 2). He was sentenced on all three offenses on September 14, 1992 and the sentences have a maximum expiration date of June 29, 2061 (*Id.*). If the ten-year sentences have expired, his argument that he is entitled to release on mandatory supervision on those sentences is moot. If the ten-year sentences commence after the sixty-year sentence has expired, he could, in theory, be eligible for release to mandatory supervision in the future. Out of an abundance of caution, Petitioner's argument that the loss of fifteen days of good time represents the loss of a liberty interest will be addressed.

### 3. Due Process Under *Wolff*

Good time credits can only be taken from a prisoner in a manner that comports with due process. The Supreme Court described the process due a prisoner accused of a disciplinary infraction in *Wolff*, 418 U.S. at 564: (1) He must receive written notice of the charges; (2) He must be allowed to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals and (3) There must be a written statement by the fact finder as to the evidence relied on and reasons for the decision.

Petitioner in this case received written notice of the charges and the hearing officer made a written record noting he found Petitioner guilty based on the charging officer's report and the fact that Petitioner did not present evidence disputing that he disobeyed the order (DHR at 1; D.E. 8-1 at 3). Petitioner does not argue that he was not allowed to call witnesses or present documentary evidence in his defense. Accordingly, Petitioner was provided the process he was due under *Wolff* and summary judgment should be entered for Respondent.

## B. Certificate of Appealability

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Although Petitioner has not yet filed a notice of appeal, the issue of whether he is entitled to a COA will be addressed. *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000)(a district court may sua sponte rule on a COA because "the district court that denies a petitioner relief is in the best position to determine whether the petitioner has made a substantial showing of a denial of a constitutional right on the issues before that court. Further briefing and argument on the very issues the court has just ruled on would be repetitious.").

A COA "may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003).

Where a district court rejects the constitutional claims on the merits, the petitioner must show that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. *Slack v. Daniel*, 529 U.S. 473, 484, 120 S.Ct. 1604, 146 L.Ed.2d 542 (2000). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 327, 123 S.Ct. at 1034.

A slightly different standard applies when the claims are dismissed on procedural grounds. In that instance, a petitioner must show, "at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 120 S.Ct. at 1604, 529 U.S. at 484 (emphasis added).

In Petitioner's case, it is recommended that his cause of action be dismissed on the merits. If the district court orders that Petitioner's cause of action be dismissed and Petitioner seeks a COA in order to proceed with his case, it is further recommended that the COA be denied because reasonable jurists would not find it debatable that petitioner failed to state a claim for violation of a constitutional right, or, in the alternative, received due process in his disciplinary hearing.

## RECOMMENDATION

Based on the foregoing, it is recommended that Respondent's motion for summary judgment (D.E. 7) be GRANTED. Petitioner's cause of action for habeas corpus relief

should be DENIED. It is further recommended that any request for a Certificate of Appealability be DENIED.

Respectfully submitted this 1st day of July, 2014.

_____
B. JANICE ELLINGTON
UNITED STATES MAGISTRATE JUDGE

### NOTICE TO PARTIES

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel. Within FOURTEEN (14) DAYS after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415 (5th Cir. 1996)(en banc).